CHRISTOPHER T. BARONE
5523 Old Salt Ln.
AGOURA HILLS, CA 91301
(818) 661-9721
THECTB@YAHOO.COM
Self-Represented

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DRAGANA BARONE AND D.B. via guardian ad litem CHRISTOPHER T. BARONE<br><br>Plaintiff(s),<br><br>vs.<br><br>LOS ANGLES COUNTY SHERIFF'S DEPARTMENT, ALEX VILLINUEVA, DEPUTY DET. SCOTT W. SHEAN #517840 and DEPUTY DET. ROGER SCHALKZ #463456; BERKSHIRE HATHAWAY INC., BERKSHIRE HATHAWAY AUTOMOTIVE, GEICO INSURANCE COMPANY, PETER BENAVIDES; PETER CHARLES. HERRERA, LISA FRIEDMAN; AND DOES 1-10<br><br>Defendant(s). | Case No.: **2:22-CV-07440-MWF-PDx**<br><br>**Declaration of Christopher T. Barone** |

1. I, Christopher T. Barone, declare that I am personally aware of the facts set forth herein and that, if called upon to testify as a witness, I could do so competently and truthfully. I am the husband of Dragana Barone and the father of our daughter D.B., and I am making this declaration on my own free will.

2. When I arrived at the crime scene, I approached my wife and embraced her best I could because it was clear she was in a lot of pain. I've seen her give birth to all three of our children, and I've never seen such panic, pain, and sheer horror on her face before. She looked disoriented and the first thing I though was she hit her head. When I asked her where the pain was, I was surprised she said her side and arm but mostly her arm. At first glance I noticed she had welts on her arm but couldn't help to wonder about her head, she said she hit it against the side window but insisted her arm hurt.

When I asked where D.B. was, she said she went to see the other lady, who ended up being Ms. Middleton (eyewitness #2). I yelled for D.B. to return, and she did, telling me what had happened. "I just hit my head against the window," D.B. said when I asked if she was okay. "Daddy, I recorded as much as I could, and he was even yelling at us…I told him to stop, and he finally did".

3. When I approached Mr. Herrera, he had his head down looking disheveled. I noticed a lady now identified as Ms. Friedman talking to him almost like she was coaching him and what I clearly heard was "…don't worry about it".

4. When I approached Mr. Herrera and inquired as to why he was yelling at my wife and daughter, Ms. Friedman requested that I leave him alone. I ignored her and inquired of Mr. Herrera whether he had any issues with my wife and daughter. It was odd, as I had just heard him yelling at my family minutes earlier. When he finally looked up at me, he said, "I recognize you," followed by an apology. I asked him if he was okay. I proceeded to get my wife's driver's license and insurance card and gave them to him so he could take a picture, which he did. He acknowledged that he was in good condition and suffered no injuries. In addition, I photographed the information he presented which was his driver's license and his father's insurance card. Again, I inquired where he might have been injured, and he responded that he wasn't injured. I inquired as to what had transpired, but he did not respond because Ms. Friedman rudely interjected and stated, "I witnessed the entire incident; she flew through the intersection (whisking her arm) and ran into him; it was her fault." Ms. Friedman was clearly invested in her opinion, too invested and I suspected Ms. Friedman of lying almost immediately after she gave her unsolicited opinion because I was staring directly at Mr. Herrera's front bumper, which had moderate damage on the driver's side, and noticed when I pulled up my wife's vehicle that it had been broadsided.

5. Immediately I knew something wasn't right. I spoke for a few minutes to Mr. Herrera who looked like he was under the influence of something but not alcohol because I was close enough to his face and didn't smell alcohol or marijuana. I stayed in contact with Mr. Herrera and

1  even texted him when on my way back from picking up my Sons I noticed his car was still at the
2  scene.
3      6.  We exchanged cordial texts centered around me letting him know I could drive him wherever he needed and extending him help if he still needed any.
4
5      7.  I swear under penalty of perjury that everything I have said is true, and I am willing and eager to testify to the same if necessary.

DATED: October 5th, 2022

_Christopher T. Barone_
**Christopher T. Barone**