1

CHRISTOPHER T. BARONE
A/N/F of D.B.

2

5523 Old Salt Ln.

3

AGOURA HILLS, CA 91301
(818) 661-9721

4

THECTB@YAHOO.COM
Self-Represented

5

6

7

8  UNITED STATES DISTRICT COURT

9  CENTRAL DISTRICT OF CALIFORNIA

10  WESTERN DIVISION

11

| | |
|---|---|
| DRAGANA BARONE AND D.B. via NEXT FRIEND CHRISTOPHER T. BARONE | Case No.: **2:22-cv-07440-SSS-PD** |
| Plaintiff(s), | **FIRST AMENDED COMPLAINT** |
| vs. | **1. MOTOR VEHICLE**<br>**2. NEGLIGENCE PER SE**<br>**3. INTENTIONAL TORT**<br>**4. FILING FALSE CLAIM - § 3729**<br>**5. MUNICIPAL LIABILITY** (*Monell Liability*) **FOR FAILURE TO TRAIN ANDDISCIPLINE DEPUTIES/OFFICERS**<br>**6. CONSPIRACY**<br>**7. Providing False Information To A Law Enforcement Officer (California Vehicle Code 31)** |
| LOS ANGLES COUNTY SHERIFF'S DEPARTMENT, ALEX VILLINUEVA, DEPUTY DET. SCOTT W. SHEAN #517840 and DEPUTY DET. ROGER SCHALKZ #463456; GEICO INSURANCE COMPANY, MERCURY GENERAL CORP.; PETER BENAVIDES; PETER CHARLES. HERRERA, LISA ELLYN FRIEDMAN; AND DOES 1-10 | |
| Defendant(s). | **JURY TRIAL DEMANDED** |

24

25      1. COME NOW, the above-captioned Plaintiffs, pursuant to the Federal

Rules of Civil Procedure and other applicable authority and file this, their

26  Complaint against the above-captioned Defendants, and in support thereof,

27  state the following:

28

2.  Where the term "Defendants" is used within this Complaint, "Defendants" is intended to and does mean and include each and every Defendant named in the caption above

### Parties

3.  Plaintiff Dragana Barone ("Plaintiff") - Driver of the SUV.  Resident living in the county of Los Angeles.

4.  Plaintiff D.B. (co-"Plaintiff") - Passenger in the SUV and Daughter of Plaintiff Dragana Barone and is a resident of living in the country Los Angeles.

5.  Defendant Lisa Ellyn Friedman – Eyewitness; Farmers Insurance Agent; Real Estate Agent; Co-conspirator; resident living in the county of Los Angeles.

6.  Defendant Charles Peter Herrera - Driver of car; Co-conspirator; Residence Unknown.

7.  Defendant Government Employees Insurance Company ("GEICO") Defendant GEICO is an insurance company registered with the California Department of Insurance within the State of California. GEICO's headquarters is located at 5260 Western Ave, Chevy Chase, MD 20815.  To hide from being sued GEIO lists C T CORPORATION SYSTEM (C0168406) on its agent for service located in 111 8th Ave Floor 13, New York, NY 10011-5213

8.  Defendant Mercury General Corporation is an insurance company registered with the California Department of Insurance to do business within the State of California whose headquarters is located at 4484 Wilshire Blvd, in Los Angeles, CA 90010.  FEIN 95-4831771; Corp. No.: C0669638 Related Case Cases Number(s):

8(a).  Los Angeles County Sheriff's Department; Alex Villanueva, Deputy Det. Scott W. Shean #517840 and Deputy Det. Roger Schalkz #463456.

9.  2-21-cv-04200-JWH-PD; LAV0VW00295-01; 19CHRO00156; 19STCV18868; B313093; 20VECP00041; LC107621; LC107535; No. 21-55319 United States Court of Appeals For The Ninth Circuit; *Atain Specialty*

*Insurance Company Plaintiffs / Appellee versus Lake Lindero Homeowner Association.* (Fraud upon the court and undeniable).

## JURISDICTION AND VENUE

10. As this action is brought under *42 U.S.C. § 1983*, this court has jurisdiction over this case under its federal question jurisdiction, pursuant to *28 U.S.C. § 1391(b)(2); 28 U.S.C. § 1331; 42 U.S.C. § 1983* states:

"*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable…*"

11. This is an action for damages brought pursuant to *28 U.S.C. § 1332* over which this court has jurisdiction with an amount in controversy that exceeds the sum of $75,000.00, exclusive of costs, interest, and attorney-related fees.

## FIRST CAUSE OF ACTION

(Motor Vehicle)

"***There's no greater tyranny than one perpetrated under the shield of the law and in the name of justice***." ~ Charles de Montesquieu

12. Plaintiffs DRAGANA BARONE, Mother of and D.B., a Minor (fourteen years old) represented my "also next friend" ("ANF") Christopher T. Barone who is the husband of Plaintiff Dragana Barone and Father of co-

plaintiff D.B. restate and incorporate the preceding paragraphs of this Complaint and proceeds with the First Cause of Action alleging that Defendants Peter Herrera ("Mr. Herrera"), Lisa Friedman ("Ms. Friedman" and "Witness #1"), Sheriff Alex Villanueva ("Sheriff"), Los Angeles County Sheriff's Department ("LACSD"), Det. Scott W. Shean #517840 ("Detective Shean") and Det. Roger Schalkx #463456 (Detective Shalkx), Geico Insurance Company ("Geico"), Mercury Insurance Company ("Mercury") and does 1-10 intentionally took part in falsifying a government document identified by LACSD as **Local Report Number ("LRN") 922-04027-2226-471**.   Plaintiff prays leave to amend this Complaint to show their true names and capacities when the same have been finally determined.

13.   Plaintiffs are informed and believe that each of all these defendants as DOES 1-10 are negligently or otherwise legally responsible in some manner for the events and negligently or otherwise, caused injury, including, but not limited to, damages to the Plaintiff's bodies and/or vehicle.

14.   This case arises out of a vehicular collision that occurred on July 21st, 2022. Ms. Barone was driving northbound on Lake Lindero Drive in Agoura Hills, CA and entered the intersection on a yellow light and when it was clear to do so.  Ms. Barone crossed 3 lanes of traffic and nearly completed her left turn (Westbound) onto Thousand Oaks Blvd. when Mr. Herrera failed to yield to Ms. Barone's vehicle, purposefully striking Ms. Barone's vehicle broadside.  Ms. D.B. (Thirteen years old) was a passenger at that time and is also the only Daughter of Ms. Barone.  D.B. was recovering from a broken collarbone broken on April 25, 2022, caused in a separate incident.

15.   Ms. Dragana Barone at the time of the accident Plaintiff Dragana Barone was insured by Mercury Insurance ("Mercury") under a motor vehicle liability insurance policy.

16.   Each defendant conspired to recreate, reinstate, author, review and lie about what happened at 5:58pm July 21st, 2022.  Plaintiffs bring to this court information, data, eyewitness declarations, photographs and later videos that

leave no doubt this collision in also nothing less than attempted vehicular manslaughter. Plaintiffs are aware of the massive corruption between LACSD and the corrupt DA's office both have been proven to be prejudice against Plaintiffs family in past incidents and a lawsuit.

17.  It would take someone with a solid grasp of the traffic law to plant outright falsehoods into the report and use the proper terms to give this LRN it's best chance of surviving under scrutiny.  Defendants Geico, Mercury and the



Los Angeles Sheriff's Department are experts in making determinations in collisions they also have tools, resources and superior financial means to get a thorough evaluation, investigation and conclusion than the Plaintiffs.  It's become apparent that Defendants Herrera and Friedman are experts as well. Detectives Scott W. Shean #517840 and Roger Schalkx #463456 are to be objective and fair in their evaluation and conclusion of a collision as serious as one involving any person especially a child.

18.  The detectives are to visually examine debris, measure skid marks using tape measure and/or measure meter if applicable, get statements from involved parties and witnesses, directing and report department personnel in the collection of physical evidence, and oversee the reconstruction of accident.

Detectives failed to get a statement from Co-Plaintiff D.B. and never asked for one, failed to get an eyewitness statement from Eyewitness #2 Shannon Middleton, failed to get a statement from Eyewitness #3 Christopher T. Barone. The reason they failed is that they didn't want information different from information that could help the Plaintiffs. This is nothing short of retaliation and continued Harassment of the Barone Family. There might be one deputy who was honest enough to disclose at the scene that Defendant Herrera was at fault. A picture of DOE#1 and license plate [Pictured Above]

19. It is a believed that this Doe #1 Sergeant seen above may have been recorded and saved on his or the detectives body camera, words to the effect of "It was his fault" referring to the Defendant Herrera while speaking to Detective Shean. Eyewitness #1 claimed she didn't see the impact because her vision was obstructed but she told witness #2 Ms. Middleton she did see the collision and told witness #3 Mr. Barone: "*I saw the whole thing, I saw her fly through the intersection, after the light turned red and she ran right into him (whisking her arm); it was definitely her fault.*". [Declaration of Witness #3 Mr. Christopher T. Barone].

20. The detectives failed to state how the Plaintiff was broadsided in the crosswalk about 7ft in front of where the defendant was stopped waiting at a red left turn arrow. The detective must ignore that and convince this court to ignore it too if they want their Twilight Zone story to continue.

21. It is the Defendant who must yield to vehicles already in the intersection unless of course the Plaintiff was "traveling at high rate of speed" so fast it was impossible or unlikely Mr. Herrera could have yielded or avoided the collision, this clearly was not the case as the evidence proves.

22. Not only did the defendant not yield, he performed a wide-open throttle action putting the pedal to the floor to blast into the Plaintiff about 7ft from where he was stopped at a red light. This type of obvious insurance fraud involves at least two cooperating individuals like Defendant Herrera and Defendant Friedman to pull off this criminal act but also it requires the two

detectives to obfuscate their duty to properly investigate and give a proper conclusion.

23. Whether acting in coordination or not is irrelevant to the cause of conspiracy. "*Purposefully causing automobile collisions can cause grave injuries or even death for the innocent victims of an automobile insurance scheme,*" District Attorney George Gascón said in a statement announcing the charges against Eduardo Retana, 25, Ausencio Gomez, 46, and Victor Valle-Diaz, 55.

24. Enter Defendant **G**overnment **E**mployees **I**nsurance **Co**mpany ("Geico") and Mercury General Corporation (Mercury). The name "Geico" is dishonest and misleading but the fact that they know the Plaintiffs don't have billions of dollars in corporate backing, so Geico proceeds to rob the Plaintiffs of their money and dignity. The legal doctrine of *uberrimae fidei* literally means "*utmost good faith*". This term is common in the insurance industry as the insurance policy, a legal contract, is said to be executed in utmost good faith. This means that all parties to an insurance contract must deal in good faith, making a full declaration of all material facts in the insurance proposal. When behemoths like Berkshire Hathaway's Geico Insurance and Mercury Insurance band together to deprive the Plaintiffs their rights to utmost good faith and hence fair chance in a trial to have the material facts presented, the Plaintiffs bear the responsibility of increased premiums and unpaid medical bills and emotional damages that linger forever.

25. Mr. Herrera's deliberate and premeditated decision to slam into Ms. Barone after he was stopped is already proven and more information will be revealed during discovery and at trial. It's undeniable that Mr. Herrera intentionally collided with the Plaintiff after seeing her coming, all to collect compensation from the insurers. Mr. Herrera went from a stop to a speed that only a wide-open throttle could have generated in around 7ft. causing an impact and collision consistent with that of "pedal to the metal" type of force.

26. Deputy Sheriffs Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 knowingly accepted and then filed a false report. Det. Scott W. Shean

#517840 and Det. Roger Schalkx #463456 conspired to file a false report against Plaintiffs Dragana Barone ("Plaintiff") and her thirteen-year-old daughter D.B. ("Daughter") by filing a false report in retaliation to the Barone Family's lawsuit against the LACSD  *2-21-CV-04200-JWH-PD*.

27.  In spite of the fact the deputy's own report states : "P2 (Mr. Herrera) said the left turn arrow turned green, so he proceeded to accelerate into the intersection,…" Nowhere did P2 state he made sure to yield to traffic in the intersection or that he even looked as required by law to ensure the intersection was clear before entering it.

28.  Let's continue "…P2 stated that as he accelerated into his left turn for northbound Lake Lindero Drive,…"  There is absolutely no way Mr. Herrera was on any course viable to make a left turn as will be shown with traffic reconstruction, it's impossible, in fact if Mr. Herrera was trying to make a U-turn it wouldn't have been possible.  The only possible explanation was Mr. Herrera waited too long to purposefully collide into the Plaintiffs car to purposefully cause the collision and never intended on making a left turn.

29.  Defendants will have to recreate their point of impact, admit mistakes were made, falsify more documents, commit perjury to explain why the impact was in the crosswalk 7ft from Mr. Herrera at an angle impossible of making a left turn.  Twilight Zone explanations are needed.  P1 travel in front of him. P2 said he was unable to stop to avoid P1 and collided

30.  All Defendants worked together to deprive a mother and her daughter of a fair review to retaliate and line their pockets with money.  This was planned and executed to deny the Plaintiff's and a fair review from an independent agent, court, arbitrator and ensure the criminals and all of them could defraud insurance companies for their own personal and monetary gain.

31.  In a wacky and twisted story that requires complete disregard for reality, objectivity, facts, truth and evidence these criminals almost pulled off a Twilight Zone story that makes no sense and requires complete and total disregard for the lawful term of "*yield the right-of-w*ay".  If it wasn't for a

dedicated, honest, and willing Plaintiff wanting this case to be reviewed, tyranny would again advance.

Again, "**There's no greater tyranny than one perpetrated under the shield of the law and in the name of justice**." ~ Charles de Montesquieu.

32.  Defendants have no worry, this isn't their first time, even when contacted and spoken to telephone and email, the defendants pushed right on, like drug addicts "jonesing for another hit, throwing common sense, common decency, and the law out the window for a chance to ruin more lives and get the almighty dollar and almighty retaliation.

33.  The defendants claim the Plaintiff was traveling at a high rate of speed, let them claim that under oath, it will never happen, the story will change, the truth will come out, or (hopefully not) it will be just like the superior court where perjury is accepted, allowed, and encouraged.  Defendants gambled and are now going to lose.

34.  They will now turn their attention to doing everything they can to get AvisBudget to destroy the ACM (Airbag Control Module) data on the Defendants vehicle that will prove Mr. Herrera put the pedal to the medal and collided with the Plaintiffs.  It's too easy to see now, especially when considering the distance (7ft) he traveled to crush and nearly kill the Plaintiffs in exchange for money.

35.  Thankfully a little-known Airbag control module records events like this to snuff out fraudsters and criminals like the Defendants and each of them. Let's see how long it takes LACSD to claim they didn't have their personal cameras on or what methods of delay and deception they will use to make it as hard as they can for the Plaintiff's to recover the data the public owns, again LACSD doesn't own the data on the cameras the plaintiffs and taxpayers do.

36.  The reason both Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff conspired against the plaintiffs is simple and happens all the time because nothing is ever done to send the proper message.

Retaliation and corruption at the notoriously corrupt Malibu/Lost Hills Sheriff's station is well known and documented.  As evidence and discovery will show.

**Geico Insurance company denies claim 872327680 0000 013 in bad faith.**

37.  Geico never intended to reveal that Peter Roland Herrera is who was the insured not Peter Charles Herrera.  Geico's bad-faith behavior can be traced back to the fact that the name "Peter Herrera" is shared by two men with familial ties: a father and a son. Instigator of the collision Peter Charles Herrera, 57, and his father, Peter Roland Herrera, 78, are not both covered by the same policy. Defendant Peter Charles Herrera claimed he was homeless, and now Geico claims they didn't know or that Peter Charles Herrera is an additionally insured person, so Plaintiff Barone has no way of knowing the fraud Geico committed or will soon commit. When brought to Mercury Insurance's attention Mercury once again stated that Geico's false claim that they were both insured on the same policy without providing any evidence.

38.  What we do know is that Peter Roland Herrera's name is listed as the only insured on the insurance card that was presented at the crime scene. Geico's alternative argument, that their "insured" wasn't the driver and therefore the Plaintiff couldn't sue Geico for bad faith, relies on more fraud and semantics when they want to play that game and was not the preliminary finding.

39.  Plaintiff agrees that attorneys for the hundred-billion-dollar corporation can get out of anything, but what they do to get out of failing to obtain or asking for the Airbag Control Module.  Proof that Plaintiff was not traveling at some mythological and arbitrary "high rate of speed", Plaintiff was traveling at 20mph below the posted speed limit [Exhibit B].

40.  If the only "eyewitness" who is a co-conspirator claims she "saw the whole thing to witness #2 and #3 and states to according the LACSD report [Exhibit A]:

COMPLAINT

*"W1 (Ms. Freidman) said that as she was waiting at the red light, she the left turm arrow for eastbound Thousand Oaks Boulevard turm green. W1 said that she then saw P1(Plaintiff Dragana Barone) travel at a high rate of speed northbound on Lake Lindero Drive into the intersection on a red light and attempt to make a left tum. W1 stated she lost sight of the P1 vehicle due to other vehicles blocking her view, but then heard a loud crash sound from behind the vehicle blocking her view. W1 stated she saw P enter the intersection on a red light for P1 's direction of travel prior to hearing the collision."*

41.   Defendant and eyewitness Lisa Friedman was allegedly traveled eastbound on Thousand Oaks Boulevard.  According to the deputy's report, Ms. Friedman never saw the accident but "heard" it from behind her.

42.   According to the LRN Ms. Friedman says the plaintiff was traveling at a "high rate of speed" which is terminology used by law enforcement officers not civilians who see people "speeding".  In either case the term "high rate of speed" is important because for the Sheriffs to continue to hurt and punish the Barone family they must be convincing enough in the LRN to pin the accident on Plaintiff Dragana Barone.

43.   Oddly the witness never mentions what the equivalent in miles per hour a "high rate of speed" is.  Ms. Friedman did not have a radar gun, isn't trained with a radar gun nor is she trained in determining what a high rate of speed is, nor did she say what the speed limit was, nor did she give an estimated speed she thought the Plaintiff was traveling to even have the opinion to justify the comment "High rate of speed" most of the time it's not needed as few attorneys and even fewer pro pers fight for the truth as hard as the Plaintiffs will.

44.  Lisa Friedman, an eyewitness, allegedly traveled eastbound on Thousand Oaks Boulevard under the same weather and lighting conditions as Mr. Herrera. According to the Sheriff's report, Ms. Friedman never saw the accident but "heard" it from behind her. MS. Friedman also told Witness # 2 that she saw everything.  Ms. Friedman then told Mr. Barone that she saw everything as well and said it was the Plaintiffs fault.

45.  According to the LRN Ms. Friedman says the plaintiff was traveling at a "high rate of speed" which is terminology used by law enforcement officers not civilians who see people "speeding".  In either case the term "high rate of



**LASD Lost Hills Stn.** ✔
@LHSLASD

Det. Shean was awarded the "Legendary Lawman" certificate for 10+ yrs as a patrol deputy, which he served at @PalmdaleSheriff. The certificate came a little late due to COVID, as he is now a detective, we are lucky enough to have him as part of our LHS family. Congrats sir 🎉👏



3:28 PM · Jul 30, 2021 · Twitter for iPhone





COMPLAINT

speed" is important because for the Sheriffs to continue to hurt and punish the Barone family they must be convincing enough in the LRN to pin the accident on Plaintiff Dragana Barone. Oddly the witness never mentions what the equivalent in miles per hour a "high rate of speed" is.

46. Ms. Friedman did not have a radar gun, isn't trained with a radar gun nor is she trained in determining what a high rate of speed is, nor did she say what the speed limit was, nor did she give an estimated speed she thought the Plaintiff was traveling. She allegedly just said at a "high rate of speed".

47. After the collision when the deputy showed up the firefighter who was assisting with the Plaintiffs injuries was kind enough to ask, "how fast were you going?" Plaintiff replied "I was just --Not fast—I was just turning from that street over here [Plaintiff points at Lake Lindero Dr.) I was turning left." Why would the firefighter ask that question? To see if the Plaintiff would incriminate herself in front of the deputy. The idea here is simple, the deputies protect the firefighters and when the firefighters get the chance to lend a helping hand, they ask the question with hope the victim will answer the firefighter differently because they aren't law enforcement officer. A failed attempt but noteworthy given the Plaintiff hit her head and it's immediately after the accident and the ACM verifies, she was going 22mph.

48. This is what has become of our civil servants whom we the citizens used to be able to trust with our lives. As the general population picks up on these types of strategies being employed the more division there is likely to be and that will not benefit anyone, but it can hurt the unsuspecting and ignorant people who are dazed and confused but want to cooperate without knowing the sinister plot being hatched at the scene of the crime. Better luck taking advantage of hurt people next time.

49. According to Ms. Friedman, who knows for a fact the Plaintiff entered the intersection after the light was red, watched the plaintiff cross 3 lanes of

traffic without hitting any vehicle only to be crushed by Defendant Herrera after nearly completing her left turn.  Ms. Friedman claims the Plaintiff was traveling at a "*high rate of speed*" but the ACM says she was traveling a low rate of speed that is 22mph according to the ACM [Exhibit B] and the speed limit on Thousand Oaks Blvd. is 45mph.  The speed limit on Lake Lindero Dr. is 25mph.  Ms. Friedman didn't just get it wrong; she lied and filed a false report.

50.    That's not all, Ms. Friedman, stopped and waited at her red light, noticed the green arrow which is in the opposite direction of the Plaintiff entering the intersection and noticed the Plaintiff's vehicle location at the exact same time.  There are major flaws with this-- There is no one-second "all-red" at this light therefore Ms. Friedman had to have eyes in the back of her head as the lights change at the exact same time.  Ms. Friedman is a liar, and she knows it.  This is not an attack on Ms. Friedman, it's an already conclusive fact as the evidence shows.

51.  The Deputies report is short on information regarding what Ms. Friedman was doing stopped at the red light but moving when a vehicle blocked her vision of the collision.  That's for good reason if we need to follow the Twilight Zone story where being short on facts is vital to their lies.  Ms. Friedman with her sunglasses on sure saw a lot in and even managed to arrive on the scene without her car anywhere in sight in time to bully Witness #2.  Ms. Friedman acted more like a professional invested in the outcome of this collision than an honest eyewitness.

**Defendant Mercury Insurance**

52.  Defendant Mercury Insurance until September 30th, 2022, failed to give an official determination about the collision.  Mercury's determination to blame the Plaintiff has been a one way railroading without conducted a proper investigation and took over 60 days to complete.  Mercury also failed to disclose a complete report regarding its investigation and only states that the Plaintiff is to blame.  This is not acting in good faith with the contract the Plaintiff and

Mercury have shared and renewed for aver 20 years.  Mercury never sought to obtain the deputies personal camera recording which will prove that it's a lie about Plaintiff statement that she didn't know what color the light was when she entered the intersection.  Uttering such nonsense is cringeworthy.

53.  Mercury has breached its contract with the Plaintiff by failing to act in good faith and by conspiring with the defendants to ensure the predetermined collision was blamed on the Plaintiff as Geico stated.  Mercury like several other entities knows getting on the wrong side of the Sheriff's Department is bad for business and knowing that, they omitted facts and failed to conduct a reasonable and honest investigation in spite of the over a dozen pleas from the Plaintiff.  Mercury has employees locally who must consider the consequences of defying a Sheriff's Department report because those involved with the LACSD know well their retaliation program implemented on those caught in their crosshairs.

54.  Mercury also willingly and knowingly provided the Plaintiff's with an auto repair company who after 3 months still hasn't returned the Plaintiffs SUV in spite of the fact the Plaintiff was told 4-6 weeks maximum by Mercury.

**Defendant Peter Herrera**

55.  On July 21st, 2022, and at all times mentioned here, Defendant Peter Herrera operated, directed, controlled and was responsible for maintaining a 2020 Silver Toyota Corolla rented car from Avis Budget (PV Holding Corp) and on July 21st, 2022, and at all times mentioned here, Defendant Avis Budget's agents, employees, staff, and/or servants, acting in the course of their employment and/or agency, conducted various inspections of the vehicle prior to its rental. During these inspections, Avis Budget's accelerator pedal, brake pedal, steering wheel and steering column were not reported to be defective or in need of repair. Seating adjustments and maneuverability were neither a problem nor reported to be a problem.   Defendant Peter Herrera's windshield was without crack or obstruction.  Plaintiff Herrera was driving eastbound, and

the sun was behind him at 5:58pm.  The sun did not pose nor was it reported to be a limiting factor in his vision.  Mr. Herrera was stopped at a red light in the left turn lane and provided a green arrow light.

56.  Det. Shean, the "**Legendary Lawman,**" [Pictured Above Left] did not make a mistake; he lied about what Plaintiff Barone told him and about who was at fault. He did so because, like Det. Roger Schalkx #463456, he wanted to retaliate against the Plaintiffs' family, who are suing LACSD.

57.  The weather was clear and 75 degrees Fahrenheit on July 21st, 2022, around 6:00pm. Mr. Herrera, Lisa Friedman[ Pictured Above Right], and the detectives from the Lost Hills Sheriff Station all stated that there was no obstruction following the collision.

58.  Plaintiffs have had to pay for medical care through insurance payments, deductibles, uncovered costs, and uninsured expenses. Plaintiff will inevitably face higher insurance premiums, causing the diversion of funds away from medical resources and needs to cover rising insurance costs. There are also significant costs associated with the plaintiff's lost productivity when she missed work to visit the doctor, go to physical therapy, and the ENT from the blunt trauma to extremities and auditory meatus done to Plaintiff Dragana Barone.

59.  Plaintiff Dragana Barone felt immediate sharp excruciating pains in her arm, ribs, head, neck, and ear; the pain was incapacitating and demanded medical attention. Another unexpected development was the Plaintiff's debilitating anxiety while driving, which caused her to stop driving, and when going through the incident with her husband, which caused an epic emotional response that shocked Plaintiff's Husband, who knows how strong mentally and physically she is.

60.  The nature of the impact was so sudden and unnecessary that there is still an unresolved understanding of why the amount of damage done to the

Plaintiff's vehicle and to the Plaintiff's body the fact from the LRN that the plaintiff had crossed 3 lanes of traffic and nearly completed her turn and was so far into the right-of-way that she nearly completed her turn before being crushed by the Defendants vehicle on the westbound crosswalk. The distance between where Mr. Herrera was stopped at the red light and the furthest distance possible at impact is only 7ft. That is, once again, the greatest possible distance as measured and recorded at the scene. There is grave concern because it's clear that this collision was not only avoidable, but also intentional, as evidence in this preliminary phase indicates.

## SECOND CAUSE OF ACTION

(Negligence Per Se Under California State Law)

61.  Plaintiffs restate and incorporate the preceding paragraphs of this complaint and proceeds with the second cause of action, On July 21st, 2022, at about 5:58 PM, All Defendants were negligent.  Mr. Herrera proceeded to smash into and injure Defendants Dragana and D.B.  At all times, Defendants, GEICO GENERAL INSURANCE COMPANY, allegedly provided liability insurance to Defendant and Insured, "Peter Herrera", Policy No. 4100-54-26-97 ("the Policy").

62.  The Traffic Crash Report to alleges that the Plaintiff, Dragana Barone, was at fault in this accident. Page 2 of the Local Report Number ("LRN") makes it clear, as does Exhibit A, closer look is needed. On the bottom left of page 2 (Traffic Crash Coding), the detective's placement of the collision indicates that the plaintiff had crossed three lanes and nearly completed her turn before she was broadsided by the defendant in the westbound crosswalk. Exhibit B, which shows that the defendant's driver-side front bumper and hood are what struck and broadsided the plaintiff's driver-side door, one of the most revealing pieces of evidence here to prove the fault of Defendant Herrera as he entered the intersection solely to cause a collision when he didn't have the right

of way. What Defendant Herrera said is recorded, as is how he behaved, as is LACSD, who acted maliciously and with the know fury of retaliation and haste.

63.  Defendant Friedman was critical to the filing of this case because of how motivated and dishonest she was.  Herrera and Friedman lied to share the loot from the insurance carriers who were more than happy to oblige in this scheme.  Defendants Herrera and Friedman would kill a mother (plaintiff) and her child (co-plaintiff) for some extra spending cash.  Both conspiring with the detectives to create a boilerplate story ensuring to use the words "*High Rate of Speed*" and "Entering the intersection on a red light", to bolster their false claim.

64.  How much more amateur hour can it get?  Evidence will prove this is untrue and Defendants know it already.  You don't become a "*Legendary Lawman*" and not see with clarity what happened in a simple yet purposeful collision like this.  Det. Shean has stood out among his peers and spent 10 or more years as a patrol deputy.  Not every deputy can reach that milestone in fact most don't and won't even try.  Yet Defendant Shean knows he lied and is incapable of being honest and fair, so he authors the false filing and declares himself a part of the criminal enterprise.

65.  It's critical to know the truth, because lying so blatantly and getting a "*Legendary Lawman*" to write such nonsense reveals a lot about their retalitory motivation.

66.  **California Civil Code § 1714.**  "(a) *Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself…*"

67.  The negligence per se doctrine is codified in Evidence Code section 669,subdivision (a), under which negligence is presumed if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation; (2)the violation proximately caused death or injury to person or

property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons or whose protection the statute, ordinance, or regulation was adopted.' 'The burden is on the proponent of a negligence per se instruction to demonstrate that these elements are met.'" (*Taulbee v. EJ Distrib. Corp. (2019) 35Cal.App.5th 590, 596 [247 Cal.Rptr.3d 538], internal citations omitted.*).

68.  *§ 1714, italics added.* (*Rybicki v. Carlson (2013) 216 Cal.App.4th 758, 763 [157 Cal.Rptr.3d 660*].). A claim under this subdivision may be brought by, or on behalf of, the person under 21 years of age or by a person who was harmed by the person under 21 years of age.  (2) A claim under this subdivision may be brought by, or on behalf of, the person under 21 years of age or by a person who was harmed by the person under 21 years of age."

## § 6:23 Breach of Duty of Care

69.  All drivers have a duty to exercise reasonable care while operating a motor vehicle.  Defendant Herrera failed to yield and stop when the Plaintiff was making a left turn at a four-way intersection.  "(a) An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. [¶] (b) *In exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification.*" (*Rest.3d Torts, Liability for Physical and Emotional Harm, § 7 (2010).*)   One exception to the accord is that while California law considers foreseeability of injury a major factor in determining duty, the Restatement, as just quoted, would consider only "*an articulated countervailing principle or policy*," as distinct from foreseeability. (Ibid.; see id., com. j, p. 82 ["*The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is*

*foreseeable. Thus, … courts should leave such determinations to juries unless no reasonable person could differ on the matter.*"].) (*Cabral v. Ralphs Grocery Co. (2011) 51 Cal.4th 764, 771, n. 2 [122 Cal.Rptr.3d 313, 248 P.3d 1170].).*

**Plaintiffs demand a jury trial**

70.  A finding of negligence rests on a determination that the actor has failed to perform a duty of care owed to the injured party. *Ronald S. v. County of San Diego (1993) 16 Cal. App. 4th 887, 893.* **Defendant had a duty of care to avoid broadsiding the Plaintiffs as they were completing their left turn.**

71. "No-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases." (*Rest.3d Torts, Liability for Physical and Emotional Harm, § 7, com. a, p. 78.*) "Sometimes reasonable minds cannot differ about whether an actor exercised reasonable care …. In such cases, courts take the question of negligence away from the jury and determine that the party was or was not negligent as a matter of law. … [¶] In other situations, reasonable minds could differ about the application of the negligence standard to a particular category of recurring facts, but under the rubric of duty courts render a judgment about that category of cases. … In conducting its [duty] analysis, the court may consider factors that might escape the jury's attention in a particular case, such as the overall social impact of imposing a significant precautionary obligation on a class of actors. These cases are properly decided as duty or no-duty cases. When no such categorical considerations apply and reasonable minds could differ about the competing risks and burdens or the foreseeability of the risks in a specific case, however, courts should not use duty and no-duty determinations to substitute their evaluation for that of the factfinder." (Id., com.  pp. 81–82, citation omitted.) (*Cabral v. Ralphs Grocery Co. (2011) 51 Cal.4th 764, 773, n. 3 [122 Cal.Rptr.3d 313, 248 P.3d 1170]*.)

72.  Mr. Herrera failed to make any attempt to avoid broadsiding an unsuspecting Mother and Daughter as they properly and lawfully were

finishing making their turn on Thousand Oaks Blvd.  Defendant Herrera failed to exhibit reasonable due care by failing to see the Plaintiff who was already in the intersection and nearly completing her turn before broadsiding her. Defendant Herrera breached his duty of care in taking any evasive action to avoid the collision that happened right in front of his face and vehicle.  Instead, Mr. Herrera went full throttle into the Plaintiff's vehicle creating a scenario for maximum damage and injury.  There is evidence presented although not intentionally, by the LRN that shows the Plaintiff had crossed 3 lanes of traffic and nearly completed her left turn before Defendant Herrera broadsided the Plaintiff.

73.  Defendant Herrera had a duty of care to see Plaintiff Barone's vehicle before accelerating into her right of way. It is undisputed that Defendant failed to stop, remain stopped or attempt to maneuver his vehicle to avoid the collision. Unfortunately, because Defendant Herrera didn't remain stopped, failed to take evasive action to avoid the collision and failed to look to ensure the intersection was clear as stated under *Vehicle Code 21800 (a)* CVC requires drivers entering an intersection to yield to motorists already at the intersection.

74.  Even if the Defendant incredulously claims to have entered the intersection at the same time *Vehicle Code 21800 (b)(1) CVC* states that if two vehicles enter an intersection at the same time, the driver on the left must yield to the driver on the right.  Defendant Herrera was to the left of the Plaintiff.

75. *Vehicle Code 21801* CVC mandates that drivers turning left, or completing a U-turn, must yield to motorists driving in the opposite direction.

76.  Under all circumstances reasonably possible in this collision Mr. Herrera was clearly at fault and negligent.

77.  Except when the Plaintiff would have had to enter the intersection while the light was red drive past 3 lanes of traffic at such a "high rate" of speed get broadsided, slam on her brakes, leave no skid marks and pull over just 30 feet from impact.  This is the story told by Defendants and it's worthy of a crime.  To blame the innocent for the actions of criminals is beyond the pale.

78.  The problem with that concocted and criminal lie is the storyteller had positioned her car far enough away that her vision was later obstructed by already moving traffic so she could only hear collision.  The Defendant moved about 7 feet.  When the Plaintiff would have had to avoid traffic on thousand oaks Blvd. heading Eastbound to get hit by the Defendant taking a left turn on Thousand Oaks Blvd. during rush hour at 5:58 pm on Thursday July 21st.

79.  What this truly presents is the very distinct possibility based on the effect of the Plaintiffs vehicle and especially and the Defendants vehicle.  Is something more sinister.

80.  Plaintiffs were both injured by the broadside collision.  Therefore, after construing the evidence most strongly in favor of the Plaintiff, reasonable minds can come to but one conclusion and that is that Defendant Herrera was negligent.

**§ 6:24 Causation**

81.  The law defines cause in its own particular way. A cause of injury, damage, loss or harm is something vital to bringing about an injury, damage, loss or harm. *Mitchell v. Gonzales (1991) 54 Cal. 3d 1041, 1053.*

82.  An action for negligence requires a showing that the defendant breached a legal duty owed to the plaintiff, and that the breach was a proximate or legal cause of the plaintiff's injuries. *Juarez v. Boy Scouts of Am. (2000) 81 Cal. App. 4th 377, 411.* §6:20 ELEMENTS

**§ 6:21 Foreseeability** (Little Duty) A defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks that made the conduct unreasonably dangerous. *Hormel & Co. v. Maez (1979) 92 Cal. App.3d 963, 968.*

**§ 6:22 Duty**

83.  A motorist, driving on either a public or private road, must exercise the degree of care and caution that an ordinarily careful and prudent person, acting in the same or similar circumstances, would exercise for the safety of

others traveling thereon. *Sills v. Forbes (1939) 33 Cal. App. 2d 219, 227; CACI 700.*

84.  In addition to driving regulations created by statute, the common-law duty requires drivers to use their vehicle "without negligence so as to abstain from injuring any other person or his property." *Bewley v. Riggs (1968) 262 Cal. App. 2d 188, 194, 68 Cal. Rptr. 520.*

85.  The age of the driver is irrelevant to their duty. *Prichard v. Veteran's Cab Co. (1965) 63 Cal. 2d 727, 732.* Plaintiff ages are 47 and 13.  Defendant is 57 years old.

86.  Within 10 seconds of getting out of the car after Mr. Herrera immediately announced he had an attorney.  He doesn't ask if the child is OK and not hurt.  Never once asks if a shaken and hurt Plaintiff Dragana Barone but again announces to the Plaintiff the first order of business that he has an attorney.  At the scene Mr. Herrera yells at the child and her mother. admits to hitting the Plaintiffs because he alleges, he had a green arrow.  Mr. Herrera realizing within seconds he admitted to hitting the Plaintiffs vehicle and causing the collision he then denies hitting anyone, indicative understanding he was at fault.  Later Witness one (Ms. Friedman) appears and claims to have seen everything and takes over the scene of the collision as an objective authority, in full disclosure, Ms. Friedman is only interested in blaming the Plaintiff and lies and deceive to do so.

86.  The Defendant states that "*every time*" he "gets into an accident", he "*sees it over and over*" he also stated that he would have waited if he had seen the Plaintiff.  These are the words used by the Defendant and establish a pattern that indicates he often gets in car accidents.

88.  Contrary to what Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff reported Plaintiff Dragana Barone clearly stated that she entered the intersection is absurd as it sounds.  Plaintiff Dragana Barone entered the intersection when the light was yellow as recorded by the detective when asked or will not be available when they realize they

have been caught filing a false claim with malicious intentions and those intentions are to continue their assault on the Barone family to ensure they are denied their rights to compensation for an atrocious collision that never should have happened.   Mr. Barone is well known by the Sheriff's department because deputies within the Sheriff's station are a part of gang that works with criminals named Marco Gonzalez and David V. Smith.  Again, that the Plaintiff would say she didn't know what color the light was when they entered the intersection wreaks of dishonesty and is only put into the report to ensure the conspiracy against the Barone family continues and to ensure Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff predetermined outcome was achieved.

**§ 6:32c Intersections**

89.  Motorist who was struck by a streetcar at intersection had duty of using ordinary care in crossing

intersection. *Aurenz v. Los Angeles Ry. Corp. (1939) 35 Cal. App. 2d 615, 619*

**§ 6:34 Causation**

90.  The law is, of course, well settled that before negligence can be actionable, a causal connection, which proceeds in an unbroken course to the very point of the infliction of the injury, must be shown between the negligent act and the injury; for no matter how negligent a defendant may have been in the abstract, a cause of action is not made out unless that negligence is in some way fastened to the particular injury for which recovery is sought. *Springer v. Pacific Fruit Exch. (1928) 92 Cal. App. 732, 737.* When a plaintiff claims injury arising out of operation of a motor vehicle, causal connection between operation of vehicle and the injury must be established.  To establish liability in negligence, it is a fundamental principle of tort law that there must be a legal duty owed to the person injured and a breach of that duty which is the proximate cause of the resulting injury. (*Romero v. Superior Court (2001) 89 Cal.App.4th 1068, 1072 [107 Cal.Rptr.2d 801].*)

91.  There is no requirement that defendants' negligent action be the sole cause of the accident. It is sufficient if it was a proximate cause or substantial factor in causing the collision. *Weirum v. RKO Gen. Inc. (1975) 15 Cal. 3d 40, 46.*

92.  Veh. Code, § 21801 (*Deering, Lexis Advance through Chapter 138 of the 2022 Regular Session)*.)

(a) The driver of a vehicle intending to turn to the left or to complete a U-turn upon a highway, or to turn left into public or private property, or an alley, must yield the right-of-way to all vehicles approaching from the opposite direction close enough to constitute a hazard at any time during the turning movement, and must continue to yield the right-of-way to the approaching vehicles until the left turn or U-turn can be made with reasonable safety.

(b) A driver having yielded as prescribed in subdivision and having given a signal when and as required by this code, may turn left or complete a U-turn, and the drivers of vehicles approaching the intersection or the entrance to the property or alley from the opposite direction must yield the right-of-way to the turning vehicle.

93.  Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff knowingly provided a false report. Lisa Friedman, knowingly lied about her claim that the Plaintiff was traveling at a high rate of speed and lied about the Plaintiff entering the intersections after the light was red.  Ms. Friedman had plenty of time to reconsider her story and the story she provided to the Detectives on the scene as such she will be held accountable

### THIRD CAUSE OF ACTION
#### (Intentional Tort)

94.  Plaintiffs restate and incorporate the preceding paragraphs of this Complaint and proceeds with the third cause of action. Defendant Herrera was attempting to catch a payday like he had a month earlier; he did his research, found an intersection without cameras, and recruited willing participants who are outright liars; however, they have been caught and must now lie more to get out of their conspiracy and intentional acts. The attorneys for these criminals will be compensated handsomely regardless, and they must resort to insults and personal attacks against the plaintiffs and her family. Furthermore, Ms. Friedman knowingly gave false information to the Det. Shean knowing it wasn't true.  The prerequisite for intentional tort, needs to show that the person who caused the harm willfully and knowingly caused the harm or was being reckless.  The harm Ms. Friedman showed is clear as Ms. Friedman's behavior, providing false information, and experience as insurance agent and real estate agent and educational background and experience proves she purposefully lied and that the her false statement would and did cause the harm for the both Plaintiffs.

95.  Section 1431.21 of the Civil Code applies to tortfeasors held liable for injuries resulting from the commission of an intentional tort. Herrera would sacrifice the life of a mother of three, wife of 23 years, who immigrated to the United States with nothing but love for her husband. Plaintiff learned English, worked minimum wage as a technician in 2000, went to college, and as expected remained loyal to the same company for 22 years; she is now a successful Project Manager, Product and Test Engineering at Skyworks Solutions, Inc.

96.  Ms. Barone has a Master of Science Degree in Engineering Management from Cal State Northridge while supporting three young children and her husband who has been unemployed for three years because of the criminal enterprise's efforts to silence him and prevent him from showing his credentials. In this case, LACSD is retaliating with senseless analysis and findings. Ms. Barone and her daughter have been caring for Mr. Barone, who has been gravely ill and nearly died from an enormous undiagnosed blood clot

and still suffers from several health conditions related to the criminal enterprise this court will soon be reading about.

97.   There is only one Magistrate who has followed the law and treated Mr. Barone fairly, and thankfully has not attempted to deprive him of his rights. The Honorable Patricia Donahue and her staff. To reiterate, the Honorable Patricia Donahue has done nothing of favor but the judicial act of following the four corners of the law.

***Notice of Related Case:***

2:21-cv-04200-JWH-PD" *Barone v. L. A. Cnty. Sheriffs Dep't, 2:21-cv-04200-JWH-PD, at (C.D. Cal.).*

98.   The Sheriff's Department has been trying to send Mr. Barone a message through extortion, violence, unlawful imprisonment, blockading his street, pounding on his door at 4am and now they are going after his family. The truth is Mr. Barone has upset the criminal enterprise and Lost Hills Sheriff's Station is a part of that.  That is why they filed a false claim here.  Mr. Barone lawfully, properly, heroically and with the guidance of a corporate attorney did the unthinkable.  Accessed the corporations own email account when a member of the criminal enterprise left him the username, password, recovery question and recovery answer along with the corporation phone number to which the account was assigned.

99.   Tyrant Shirley K. Watkins who wears a black robe in Department T of the Van Nuys Courthouse East is in a heap of trouble but given the corrupt influence of several judges has evaded justice but that too will be heard in this court soon.  This court is promised, or it should believe nothing in this complaint.

## FOURTH CAUSE OF ACTION

### (Filing a False Claim (FCA) - § 3729)

100.   Plaintiffs restate and incorporate the preceding paragraphs of this Complaint and proceeds with the fourth cause of action The false claims

provision creates liability for knowingly presenting, or causing to be presented, a false or fraudulent claim for payment (*31 U.S.C. § 3729(a)(1)(A)*).

101.  The false statement provision creates liability for knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim (*31 U.S.C. § 3729(a)(1)(B)*).

102.  Likewise, when Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff authored and reviewed LRN 922-04027-2226-471 they knowingly and purposefully lied about the Plaintiff being at fault.  The fake story provided by Ms. Friedman fails to make sense and ignores the law completely.  Ms. Friedman took it further when she took it upon herself to remove witness #2 from the vicinity when the Plaintiffs where to discuss her strong belief about what happened away from where she knew the Plaintiffs were to ensure they couldn't hear her.  This premeditated act alone causes a great deal of suspicion as to why Ms. Friedman would lie and fabricate a story to hurt the Plaintiffs.

103.  It is noteworthy and unconscionable that not one time, not one inquiry by Ms. Friedman was made to the Plaintiffs about their health given the nature of the collision, clear distress of the Plaintiffs and age of a thirteen-year-old girl.  Ms. Friedmans only and obvious concern was to ensure Plaintiff Barone would be blamed for the collision.  Defendant Friedman couldn't have cared less about the well-being a mother and her child after hearing how bad the accident and that is far from normal, is not within any reasonable duty of care or action taken by an objective observer and eyewitness.  Eyewitness #2 specifically avoids any interaction with the Plaintiffs and seeks to blame them when she knowingly is lying.

104.  While evidence of involvement in other accidents might be inadmissible when its purpose is solely to prove negligence in this accident, the trial court admitted the evidence for the limited purpose of showing the father's knowledge and instructed the jury accordingly and told the jury it was not to consider the evidence in determining whether the son was negligent in the

- 28 -

accident involved in the litigation. (*Allen v. Toledo (1980) 109 Cal.App.3d 415, 418 [167 Cal.Rptr. 270]*.).  Herrera volunteered this information at the scene of the collision that "just a month ago" he was part of another crash and tried to use that information against the Plaintiff's for that crash as well.

105.  Before July 21st. 2022 LACSD developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in Los Angeles Country and specifically with the Barone family, which caused the violation of Plaintiff's rights. It should be noted that this Cause of Action does NOT include Ms. Friedman. Instead a seventh cause of actions was added.

## FIFTH CAUSE OF ACTION
## (FAILURE TO TRAIN)

106.  Plaintiffs restate and incorporate the preceding paragraphs of this Complaint and proceeds with the fifth cause of action It was the policy and/or custom of the LACSD to fail to exercise reasonable care in hiring and training its deputies, including Defendants Los Angeles County Sheriff's Department ("LACSD"), Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff, and Deputy DOE, thereby failing to adequately prevent constitutional violations on the part of its Deputies and other employees of LACSD. It was the policy and/or custom of LACSD to inadequately supervise and train its Deputies, including Defendants Los Angeles County Sheriff's Department ("LACSD"), Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff, thereby failing to adequately discourage further constitutional violations on the part of its Deputies.

106.  As a result of the above-described policies and customs, LACSD, including Defendants Los Angeles County Sheriff's Department ("LACSD"), Det. Scott W. Shean #517840 and Det. Roger Schalkx #463456 Deputy Sheriff, believed that their actions would not be properly monitored by supervisory

officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

107.  The above-described policies and customs prove a deliberate indifference on the part of the LACSD to the constitutional rights of persons within the county of Los Angeles and the Barone family and were the cause of the violations of Plaintiff's rights alleged here.  This cause of action relates only to the Los Angeles Country Sheriff's Department.

## SIXTH CAUSE OF ACTION

### (Conspiracy)

108.  Plaintiffs restate and incorporate the preceding paragraphs of this Complaint and proceeds with the sixth cause of action. Defendants Peter Charles Herrera, Lisa M. Friedman, LACSD, Detective Scott W. Shean #51782 and Det. Roger Schalkx #463456 and DOES 1-10 entered into an implied agreement through their unlawful actions and conduct to deprive the Plaintiffs their rights to be treated fairly under the law.

109.  This collision caused physical, emotional, and financial harm to the plaintiffs. Defendants conspired willfully to deny Plaintiffs their day in court and violated their civil rights in violation of *42 U.S.C. 1985* by filing a false claim containing knowingly false information to deny Plaintiffs proper medical coverage and legal recourse. Circumstantial evidence is typically used to prove conspiracies. '[S]*ince such participation, cooperation or unity of action is difficult to prove by direct evidence, it can be inferred from the nature of the act done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.*'" (*Rickley, supra, 212 Cal.App.4th at p. 1166, internal citation omitted.)*

110.  Plaintiff Barone entered the intersection when the light was yellow, almost completing her turn after passing three lanes on Thousand Oaks Blvd when she was broadsided by the defendant, who did not check to ensure the intersection was clear and did not attempt to avoid the plaintiff. In fact, the

Defendant saw the Plaintiff's vehicle approaching, saw that there were two females in the car, and decided to maximize his impact by stepping on the gas. The defendant was using the lives of the plaintiffs to collect insurance money, and it almost worked because all the defendants participated. Before he intentionally struck, the Defendant had to see the Plaintiffs, as they had begun to pass him. The plaintiff never traveled at a high speed, and every defendant knows this and has lied about it.

111. "*Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights. Private parties involved in such a conspiracy may be liable under section 1983.*" (*United Steelworkers of America v. Phelps Dodge Corp. (9th Cir. 1989) 865 F.2d 1539, 1540, internal citations omitted*.). The real gist of a civil conspiracy action is not the conspiracy itself, but the damages suffered thereby. It is the long-established rule that a conspiracy by itself however atrocious, does not rise to a cause of action unless a civil wrong has been committed resulting in damage. (*Rosenfeld v. Cohen (1983) 146 Cal.App.3d 200, 208 [194 Cal.Rptr. 180]*.). The elements of an action for civil conspiracy are

(1) formation and operation of the conspiracy – Defendants formed

(2) damage resulting to plaintiff – As described in this complaint and exhibits and anything else that is related to injury and the court finds relevant.

112. (3) from a wrongful act done in furtherance of the common design. (*Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1051 [39 Cal.Rptr.3d 516, 128 P.3d 713]*.) Participating in a vehicular collision that injured both Plaintiffs medically and emotionally as well as taking away the Plaintiffs ability to freely drive without fear and damage to Plaintiff's Vehicle did not allow her to travel freely because she had no car after 30 days.

113. Defendants and all of them, formed an operation of the conspiracy by depriving Plaintiffs Barone their right to seek legal remedy for collision they didn't cause or create but were victims of. In a society where too often, the perpetrators are purporting to be the victims one of the worst versions of this is

when the Conspirators had no regard for the lives, they could have killed to seek money from insurance in an insurance fraud scam.  The only thing left is to levy a punishment which discourage others to do the same.

114.  In this action the major significance of the conspiracy lies in the fact that it rendered each Defendant in this "wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (*Doctors' Co. v. Superior Court (1989) 49 Cal.3d 44, citing Mox Incorporated v. Woods (1927) 202 Cal. 675, 677-78.)'* (*Id. at 511.*)

115.  Defendant Lisa M. Friedman just walked up seemingly out of nowhere and took over like a director and producer on a movie set, telling the other eyewitnesses she "Saw the whole thing" [Barone Declaration].  And adamantly telling Eyewitness #2 Shannon Middleton that it was Plaintiff Barone's fault like she was certain the detectives would believe her story. Ironically, they did despite the evidence and statements made to them. **Peter Charles Herrera's** entire demeanor changed as soon as Ms. Friedman was alive, immediately he started feigning a heart problem and projecting his actions openly and stating  "I don't know why people have to do this" and then stating that "every time this happens…" later he is even seen trying to hand her his proof of insurance to Ms. Friedman before once again walking off together like a director and her lead actor giving final instructions and encouragement to the actor Mr. Herrera so he could get himself under control and not to panic.

116.  Mr. Herrera filed a false claim with LACSD, and LACSD made false claims that the plaintiff entered an intersection after the light turned red. Evidence is clear that didn't happen it isn't possible for it to have happened and if it did happen the Defendant still failed to yield.

117.  Ms. Friedman stated (lied) that the plaintiff was traveling at a high rate of speed. Ms. Friedman is not trained to determine what constitutes a high rate of speed, nor was the plaintiff traveling at a "high rate of speed." In fact, Ms. Friedman stated that she did not witness the collision.  In either case

information provided from the airbag control module ("ACM") states correctly that Plaintiff was traveling 26mph decreasing to 20 mph at time of impact.

118.   Sheriff Villanueva/ LACSD, Detective Scott W. Shean #51782 and Det. Roger Schalkx #463456, sadly the most corrupt station.  There are deputies who will never take an assignment there because of how deeply corrupted this station is and has been (private admittance from LASD employee).  From the exhibits provided you can have no other explanation for the mistreatment of the Barone family.  A family that who in the face of danger and absence any selfish desire has reached out to help the community and the Sheriff's station to be shunned, ostracized, harassed, and jailed.

119.   Defendant LACSD is notorious for operating without transparency and accountability.  It's routine retaliation against whistleblowers did not start with the current Sheriff, Alex Villanueva Former Sheriff Lee Baca and former undersheriff Paul Tanaka both served prison terms. But Villanueva has picked up the torch and has taken retaliation against those who speak out about LACSD transgressions to another level.

120.   Sheriff Villanueva has held himself out as above the law and immune to accountability, operating with the lack of transparency and audacity of a third world dictatorship and evading any oversight.  Plaintiffs and all of them were raised to respect help law enforcement and to this day, that is still the moral obligation of the Barone family but it's clear that support is being held by a thread.

121.   For example, Inspector General Max Huntsman's job is to provide oversight over the Sheriff, but the Sheriff refuses to cooperate with the inspector general, is being held in contempt of subpoenas to testify under oath and has even placed Mr. Huntsman under a fabricated criminal investigation, as Villanueva has done with so many others. The inspector has concluded that Villanueva is a "tyrant" who has committed crimes and obstructed justice in several instances.  It would have been so easy to believe the Sheriff but not

anymore.  What's going on with former Supervisor Shiela Kuhl?  Tyranny is breaking out because the truth is being suppressed.

122.  The Sheriff and his wife, Vivian, run LACSD like their own personal fiefdom and business by placing individuals whom they consider as allies in key positions within the department, despite these individuals' lack of qualifications and ethics, while weeding out individuals with integrity, without regard for their accomplishments or contributions. This is exemplified by the appointment of (then Lieutenant) Yvonne O'Brien as acting Captain of Personnel Administration Bureau ("PAB"), despite her lack of qualifications and a sordid history of Policy of Equality violations, being sued in lawsuits, and criminal conduct.

123.  Vivian Villanueva is an associate of the deputy gang, the Banditos, and has acted as the gang's protector during Alex Villanueva's reign as sheriff.

124.  LACSD has gang members for deputies, and Sheriff Baca thrown in federal prison for 3 years for obstruction of justice.  Deputies were caught showing pictures of the dead bodies of NBA great Kobe Bryant, his daughter and the remains of others killed in a helicopter crash.

125.  The Captain of the Malibu/Lost Hills Sheriff's Department Jennifer Seetoo is suing her employer and Sheriff Villanueva for of all thing's **retaliation** in Case No. 20STCV03294.  That's correct, the Captain of Malibu/Lost Hills is suing for retaliation inter alia.  This is exactly what is going on with Ms. Barone and her family who have far less means to defend themselves.  This out-of-control Sheriff's Department believes itself to be above the law.

126. "*Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights. Private parties involved in such a conspiracy may be liable under section 1983.*" (*United Steelworkers of America v. Phelps Dodge Corp. (9th Cir. 1989) 865 F.2d 1539, 1540, internal citations omitted.*)

**Plaintiffs**

127.  Because of this avoidable broadside collision Ms. D.B. suffered a sharp piercing pain on her collarbone to her right shoulder.  D.B. also hit her head with force on the passenger side window causing an immediate hematoma and pain on her skull.

128.  A day later D.B. was in excruciating pain on the left-side and back neck.  D.B. is a USA Wrestling - California State Champion and National Champion (NABJJF) in Brazilian Jiu Jitsu and International Brazilian Jiu Jitsu Federation Champion (IBJJF) therefore inherently has an extremely high pain tolerance.  D.B. complained of pain and suffered miserably the next 2 days with deep throbbing aches in her neck, sharp pains in her collar bone dissipating on July 24th, and strong migraine-like headache that dissipated each day ending on July 25th, 2022.

129.  Co-plaintiff D.B. is not an average 13-year-old she is a straight A student whose lowest grade was 94.8 percent last year.  She is as beautiful as she is smart and tough but there is no escaping the obvious pain caused by the Defendants and all of them.  No child should have to go through the tongue-lashing and berating she received but again as proof she isn't an average child, she kept her bearing and recorded the incident and Defendant Herrera's road rage.  D.B. also managed to catch on camera the lying despicable behavior of Lisa Friedman who chose to lie and deceive as well as proceed with a false filing against the Plaintiffs to get her cut of cash from the all-too-compliant insurance representatives.

### SEVENTH CAUSE OF ACTION
### Providing False Information To A Law Enforcement Officer
### (California Vehicle Code 31)

130.  Plaintiffs restate and incorporate the preceding paragraphs of this Complaint and proceeds with the Seventh cause of action against Defendant Lisa Ellyn Friedman for providing false information to the LACSD.  Under CVC

31, it is a crime to knowingly give false information to a peace officer while the officer is performing his duties.  Specifically, Ms. Friedman violated VC 31 by providing a wrong answers and false information to a peace officer during the time she was questioned by deputies of LACSD.  Ms. Friedman claimed she saw Plaintiff Dragana Barone traveling at a high rate of speed and that she entered the intersection after the light had turned red.  As proven by the ACM Ms. Barone was not traveling by any reasonable measure close to "high rate of speed" not did Ms. Barone enter the intersection and cross three lanes of traffic 5:58pm July 21st, 2022 a Thursday and not a holiday but workday.  Eyewitness Mr. Sweiss who saw the accident and didn't just "hear" the accident.  In fact, Mr. Sweiss states "*I clearly observed the White SUV enter the intersection while the light was yellow.  The White SUV was traveling at a normal speed or even below the speed limit…*" [Sweiss Declaration p2 ¶3].  Furthermore, Ms. Friedman specifically told Mr. Barone that Ms. Barone "I witnessed the entire incident; she flew through the intersection (whisking her arm) and ran into him; it was her fault".  [Decl. Mr. Barone p2 ¶4 (22-23)].

131.  The real gist of a civil conspiracy action is not the conspiracy itself, but the damages suffered thereby. It is the long-established rule that a conspiracy by itself however atrocious, does not rise to a cause of action <u>unless a civil wrong has been committed resulting in damage</u>.  (Rosenfeld v. Cohen (1983) 146 Cal.App.3d 200, 208 [194 Cal.Rptr. 180].). The elements of an action for civil conspiracy are

(1) formation and operation of the conspiracy – Defendants formed

(2) damage resulting to plaintiff – As described in this complaint and exhibits and anything else that is related to injury and the court finds relevant.

112. (3) from a wrongful act done in furtherance of the common design.

(Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1051 [39 Cal.Rptr.3d 516, 128 P.3d.

132.  Plaintiff believes it has met the burden to claim conspiracy and providing false information to a Law Enforcement Officer/Peace Officer.

Palintiff would respectfully ask the court a chance to amend if necessary. Plaintiff would also like to disclose that Mr. Barone as ANF is meant only to have representation for his Daughter which has been denied by every attorney Mr. and Ms. Barone have contacted.  Attorneys have dropped Plaintiff's once discovered that A.  The Sheriff's Department and Mr. Barone have an existing complaint.  B.  Saw the Falsified Sheriff's Report and blaiming Ms. Barone and/or C.  After checking with the San Fernando Valley Bar Association to see if it was OK to take this case and the SFVBA denying their inquiry.

133.  Mr. Barone in no way, shape, or form desires to provide his self-acknowledged inferior representation for his Daughter, if the court permits Mr. Barone as ANF.

Wherefore, Plaintiff respectfully requests the following relief:

1.      Actual damages in the amount to be determined and rising.

2.      Punitive damages in the amount to be determined and rising.

3.      Interest on such damages as allowed by law.

4.      Costs related and including this lawsuit; and

5.      Any other relief that the court deems just and proper.

6.      Plaintiffs' request any help this court can provide within its discretion as a clear and concerted effort to kill and seriously injure the Barone family is evident and escalating.  There is no turning to the corrupt LASD or even the DA 's office as it's clear they are in a direct conflict of interest.

134.  In an effort for sincere and truthful motive this court can review Civil Cases LC107535 (Primary) LC107621, 20VECP00041, 20CHRO00060, LAV0VW00295-01 & UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT No. 21-55319 ATAIN SPECIALTY INSURANCE COMPANY, Plaintiffs / Appellee versus LAKE LINDERO HOMEOWNERS ASSOCIATION to provide a nearly perfect outlier from all cases involving the honorable, law abiding, community helping, honest and loving Barone family with 3 young children.  The last case being nothing short of fraud as the Board of Directors installed by the tyrant Judge Shirley K. Watkins in Dept. T of the Van Nuys Courthouse refuses to stay the tyrannical recall/Election case (20VECP00041) to allow all these other cases to be finished and fraudulently decided.

135.  No amount of intimidation, bullying, death threats, vehicular manslaughter, poisoning of the Plaintiff's husband, liens placed on Plaintiff's home, contempt charges, criminal cases, and tyranny will compel the Barone family to back down.

136.  For three years the Plaintiff's family has been under constant attack and defamed and for three years justice has been perverted and absent.  This case is a continuance of tyranny being condoned and used by the Los Angeles County Sheriff's Department and their accomplices who donate to them directly and indirectly.

"***The only thing necessary for the triumph of evil is for good men to do nothing.***"

Respectfully submitted,

October 4th, 2022

Plaintiff - Dragana Barone

October 4th, 2022

Co-Plaintiff - D.B.
A/N/F Christopher Barone

COMPLAINT

COMPLAINT